547 So.2d 630 (1989)
Thewell E. HAMILTON, Appellant,
v.
STATE of Florida, Appellee.
No. 72502.
Supreme Court of Florida.
July 27, 1989.
*631 Michael E. Allen, Public Defender, and W.C. McLain, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Gary L. Printy and Carolyn M. Snurkowski, Asst. Attys. Gen., Tallahassee, for appellee.
PER CURIAM.
Thewell Hamilton appeals from his convictions on two counts of first-degree murder and the imposition of the death penalty in both counts. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons which follow, we reverse the judgments and sentences as to both counts and remand for a new trial.
On the evening of September 19, 1986, gunshots were heard emanating from the Holmes County house Hamilton shared with his wife, Madeline, his teenaged stepson, Michael, and his two young children, Shannon (an infant) and Shaun (two years old). At approximately 7:00 p.m. an ambulance service received a distress telephone call from a man who stated that his family had been shot. Upon their arrival at the address given by the caller, the ambulance service personnel discovered the bodies of Madeline and Michael, dead of multiple gunshot wounds. Hamilton, who was in a back bedroom with Shannon and Shaun, *632 told the police that Madeline's former husband, Gus, who had recently been released from prison, had threatened Madeline.[1] Police found four spent shotgun shell casings in the house and a sixteen gauge, double-barrel shotgun underneath a van parked seventy-five feet from the Hamilton house. Ballistics tests revealed that this was the shotgun used to shoot both Madeline and Michael.
Approximately two hours after the first distress call was received, a caseworker from the Department of Health and Rehabilitative Services (HRS) took Shannon and Shaun out of the house. During the ride, Shaun told the caseworker: "Mommy dead, Daddy shot Mommy and Michael." Shaun repeated this statement several times.
Hamilton testified on his own behalf as to the events of that evening. He stated that Madeline and Michael engaged in a heated argument that evening and that Madeline had been drinking. Hamilton took the children to the back bedroom, from where he heard gunshots. According to Hamilton, when he entered the hallway where the argument had taken place, Michael was on the floor and Madeline was holding the shotgun. In Hamilton's attempt to wrestle the gun away from Madeline, the shotgun fired twice, killing Madeline.
The jury returned verdicts of guilty on both counts. Following a sentencing proceeding and two jury recommendations of death, the trial court sentenced Hamilton to death for both murders. The court found the following aggravating circumstances: (1) the murders were heinous, atrocious, and cruel; (2) the murders were cold, calculated, and premeditated; and (3) (as to the murder of Michael) Hamilton had been previously convicted of a violent felony, namely the contemporaneous shooting of Madeline. In mitigation, the trial court found the following factors: (1) Hamilton had no substantial history of criminal conduct; (2) Hamilton was a nonviolent person; (3) Hamilton had served honorably in the armed forces for twenty years; and, (4) Hamilton was not known to drink alcohol to excess.
Hamilton alleges three errors were committed by the trial court during the guilt phase of the trial. We agree. First, Hamilton argues that the trial court's denial of his requested challenge for cause of a prospective juror constitutes reversible error. He contends the juror stated she had a preconceived opinion of Hamilton's guilt and that it would take evidence put forth by Hamilton to convince her he was not guilty. The record bears out this allegation. We recognize the juror eventually stated that she could base her verdict on the evidence at trial and the law as instructed by the court. Nonetheless her responses, when viewed together, establish that this prospective juror did not presume Hamilton was innocent. Even after the juror responded affirmatively to questioning by the trial judge regarding whether she could hear the case with an open mind, she again asserted that she had a fixed opinion as to guilt or innocence. Although Hamilton could have used one of his remaining peremptory challenges to remove this juror, he elected not to do so. At the conclusion of voir dire, after Hamilton had exhausted his peremptory challenges, he requested an additional challenge so he could backstrike this juror. The request was denied, and the juror sat on the panel which decided Hamilton's fate.
The denial of the challenge for cause constitutes reversible error. This Court has repeatedly applied the rule set forth in Singer v. State, 109 So.2d 7, 23-24 (Fla. 1959):
[I]f there is basis for any reasonable doubt as to any juror's possessing that state of mind which will enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial he should be excused on motion of a party, or by the court on its own motion.
See also Moore v. State, 525 So.2d 870, 872 (Fla. 1988); Hill v. State, 477 So.2d 553, 555 (Fla. 1985). This rule must be read together with our statement in Lusk v. State, 446 So.2d 1038, *633 1041 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984), that "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely on the evidence presented and the instructions on the law given to him by the court."
Although the juror in this case stated in response to questions from the bench that she could hear the case with an open mind, her other responses raised doubt as to whether she could be unbiased. For example, the juror's statement that Hamilton would be required to introduce evidence to convince her that he was not guilty pointedly demonstrates this juror's preconceived opinion of guilt. Essentially, this juror would require a defendant to prove his or her innocence rather than require the state to prove the defendant's guilt. "A juror is not impartial when one side must overcome a preconceived opinion in order to prevail." Hill v. State, 477 So.2d at 556. It is clear that the juror did not possess the requisite impartial state of mind necessary to render a fair verdict and thus should have been dismissed from the jury pool. The failure to excuse this juror upon motion deprived Hamilton of his constitutional right to a fair trial, requiring us to reverse the conviction and remand this case for a new trial.
Hamilton's next point addresses the admission of the HRS caseworker's testimony concerning Shaun's statement that his father killed Madeline and Michael. Hamilton contends that this testimony, admitted pursuant to the excited utterance exception to the hearsay rule, section 90.803(2), Florida Statutes (1985), should have been excluded. We agree, but find the error harmless. This exception allows the admission of hearsay testimony where a statement relating to a startling event is made while the declarant is under the stress of excitement caused by the event. See State v. Jano, 524 So.2d 660, 661 (Fla. 1988). It is central to the reliability of the statement that the declarant not have time to reflect on the event before making the "excited utterance." Jackson v. State, 419 So.2d 394, 396 (Fla. 4th DCA 1982). Here, at least two and one-half hours elapsed between the shootings and Shaun's statement. He had ample opportunity while at the scene of the shootings to overhear deputies, investigators, and several other people state that opinion. This time lapse renders Shaun's statement unreliable and thus inadmissible under the excited utterance exception. Accordingly, it should not have been admitted. However, this error alone does not constitute reversible error. State v. DeGuilio, 491 So.2d 1129 (Fla. 1986).
The final guilt phase issue raised concerns whether Hamilton, as a white man, has standing to object to the discriminatory use of peremptory challenges against a black prospective juror. We have recently addressed this issue in our opinion in Kibler v. State, 546 So.2d 710 (Fla. 1989). In that case we held that a white person has standing to object to the discriminatory exclusion of black jurors from his jury panel. The record reflects that Hamilton properly preserved this point for appeal, thus requiring reversal on this point as well. We express no opinion on the issue of whether black jurors were improperly excluded from Hamilton's jury. We merely hold that he has standing to raise the issue in the trial court and that he was improperly denied the opportunity to raise the objection.
Although our decision on the issues raised thus far requires reversal, we believe it is necessary to discuss the application of two of the aggravating circumstances to these facts. Although the trial court provided a detailed description of what may have occurred on the night of the shootings, we believe that the record is less than conclusive in this regard. Neither the state nor the trial court has offered any explanation of the events of that night beyond speculation. Nonetheless, the court found that the crimes were heinous, atrocious, or cruel and that they were committed in a cold, calculated manner with a heightened sense of premeditation. There is no basis in the record for either of these findings. Aggravating factors must be proven beyond a reasonable doubt. The *634 degree of speculation present in this case precludes any resolution of that doubt.
Accordingly, we reverse both convictions and sentences in this case, and remand for a new trial.
It is so ordered.
OVERTON, BARKETT and KOGAN, JJ., concur.
GRIMES, J., concurs with an opinion, in which EHRLICH, C.J., and SHAW, J., concur.
McDONALD, J., concurs in part and dissents in part with an opinion.
EHRLICH, C.J., and SHAW, J., concur in result only.
GRIMES, Justice, concurring.
A statement made two and one-half hours after the event can still qualify as an excited utterance providing it is shown that the declarant was under the stress of the excitement caused by the event. State v. Jano, 524 So.2d 660 (Fla. 1988). However, I am inclined to agree that in this case the evidence fell short of demonstrating the necessary predicate. I cannot see how the erroneous admission of the child's statement that "Daddy shot Mommy and Michael" can be considered harmless.
EHRLICH, C.J., and SHAW, J., concur.
McDONALD, Justice, concurring in part and dissenting in part.
I agree that Hamilton is entitled to a new trial because he was deprived of the opportunity to contest the use of peremptory challenges to exclude black prospective jurors. I also agree that the admission of the hearsay statements of the HRS caseworker was error, but harmless. I disagree with the conclusion of the majority that the trial judge erred in failing to allow the challenge for cause of the prospective juror who had a prior opinion on the defendant's guilt. The totality of the questioning supports the trial judge's conclusion that the juror could lay aside any bias or prejudice and render her verdict solely on the evidence presented and the instructions on the law given to her by the court. The trial judge witnessed and observed the inquiry. I see no error in this issue.
I would not address the penalty issue because a complete new trial will be forthcoming.
NOTES
[1] The record reveals that Gus was in Washington, D.C. at the time of the shootings.