DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHAN FROGEL,**
as personal representative of the Estate of Bette J. Cash,
Appellant,

v.

**PHILIP MORRIS USA, INC.,**
Appellee.

No. 4D19-2781

[October 28, 2020]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cymonie S. Rowe, Judge; L.T. Case No. 50-2007-CA-023246-XXXX-MB.

David J. Sales and Daniel R. Hoffman of David J. Sales, P.A., Sarasota, Randy Rosenblum of Dolan | Dobrinsky | Rosenblum, Miami, and Gary M. Paige, Robert E. Gordon, and Cassandra Lombard of Gordon & Partners, Davie, for appellant.

David M. Menichetti and Geoffrey J. Michael of Arnold & Porter Kaye Scholer, LLP, Washington, D.C., and Geri E. Howell of Shook, Hardy & Bacon, LLP, Miami, for appellee.

LEVINE, C.J.

In this *Engle* progeny case, 189 prospective jurors were available at trial, but the courtroom had a maximum capacity of 100. As part of an effort to winnow down the jury pool, the trial court granted Philip Morris's request to dismiss eight prospective jurors, over appellant's objection, based entirely on the written answers in their questionnaires. Philip Morris argued that the prospective jurors could not be rehabilitated based on their answers in the written questionnaires.

Appellant appeals the final judgment and claims several errors, including the fact that the trial court released prospective jurors without allowing appellant to orally question the released prospective jurors. We agree that the trial court erred in releasing the jurors without allowing appellant to question them. This is especially true since the record did not

establish that it was "conclusively clear" that the released prospective jurors could not be impartial.

Thus, we reverse the final judgment and reaffirm that the "right of the parties to conduct a reasonable examination of each juror orally must be preserved." Fla. R. Civ. P. 1.431(b). Since this case may be subject to retrial, we also write on other remaining issues for guidance to the trial court on remand. Finally, we affirm Philip Morris's cross-appeal without further comment.

The decedent, a lifelong smoker, died from lung cancer and COPD. Her son, as personal representative of her estate, sued Philip Morris for wrongful death. Before trial, the trial court granted Philip Morris's motion to use a questionnaire to assist in voir dire. After the trial court dismissed jurors based on hardship, approximately 189 prospective jurors remained. The trial court expressed concern because the courtroom had a maximum capacity of 100. The trial court directed the parties to come to an agreement on which prospective jurors to release based on their completed questionnaires. The parties were unable to reach an agreement.

The trial court decided to go through the list of jurors each side sought to exclude. Philip Morris sought to exclude multiple jurors, including eight jurors based on their written responses to question 31. Question 31 asked:

> Have you heard, or read, or followed any media reports (including television, radio, magazine, or newspapers), advertisements, or social media concerning litigation or other actions taken against the tobacco industry and/or cigarette, or anything related to tobacco industry conduct?

The eight jurors at issue gave the following written responses:

- Juror 2,1: "I'm a smoker. I think Tobacco Industry is helping to keep my addiction."

- Juror 2,3: "Vague statements in media about cigarette companies and their audience. I feel cigarette companies have been predatory."

- Juror 3,9: "They don't tell the truth, even under oath & CEO's too."

2

- Juror 4,6: "Big tobacco knows they are selling products that kill and as pressure mounts in the US against them they ramp up selling to the third world."

- Juror 5,8: "I believe the tobacco companies knew the dangers of what smoking could do to people and felt money + profit were more important."

- Juror 9,9: "I do not like anything related to tobacco due to the fact that I believe my family/me died or got ill due to tobacco. I read on social media and newspapers as well as watched news stories."

- Juror 10,4: "I remember reading an article on abolishing smoking. I agree, as the tobacco industry has taken advantage of the public for profit. Their product is life-threatening and causes more harm."

- Juror 13,9: "I personally feel cigarettes should be outlawed. Children are getting addicted. I was personally affected from my stepdad's smoke."

Appellant objected to the dismissal of the eight jurors based solely on their written responses, arguing that he was entitled to orally question them under *Irimi v. R.J. Reynolds Tobacco Co.*, 234 So. 3d 789 (Fla. 4th DCA 2018). The trial court agreed with Philip Morris that dismissal was warranted as to those jurors because their written responses demonstrated that they could not be rehabilitated. Before the jury was sworn, appellant renewed his objection and moved to strike the panel.

The jury returned a verdict finding the decedent 80% at fault and Philip Morris 20% at fault. The jury awarded $50,000 to appellant. Based on the parties' joint pre-trial stipulation which capped any comparative fault finding against the decedent at 50%, the trial court entered a judgment in the amount of $25,000.

Appellant moved for a new trial, arguing, inter alia, that the trial court erred in denying him the right to question prospective jurors. The trial court denied the motion. This appeal and cross-appeal follow.

Normally the standard of review for excusing a juror for cause is subject to the abuse of discretion standard of review, since the trial court has the ability to observe and evaluate the prospective jurors' demeanor and

3

credibility. *Castro v. State*, 644 So. 2d 987, 990 (Fla. 1994). However, in the present case, the trial court does not have a superior vantage point from the appellate court. "Where a trial court's ruling is based entirely on written evidence, the appellate court is in the same position as the trial court in weighing the evidence." *Holmes v. Bridgestone/Firestone, Inc.*, 891 So. 2d 1188, 1191 (Fla. 4th DCA 2005). We find that we are in the same position as the trial judge. *Walton v. Estate of Walton*, 601 So. 2d 1266, 1268 (Fla. 3d DCA 1992) ("The rule has long been established that where a trial judge bases his final order on the transcribed testimony of witnesses, the appellate court is in the same position in examining the testimony as is the trial judge.").

Thus, we can use the de novo standard of review as to the review of the juror questionnaires. Further, the "failure to allow counsel to inquire into a prospective juror's potential biases amounts to an abuse of discretion warranting reversal unless it becomes 'conclusively clear to the court after questioning, that there was no reasonable basis to anticipate that the juror could return a verdict against the defendant.'" *Irimi*, 234 So. 3d at 796 (quoting *Melendez v. State*, 700 So. 2d 791, 792 (Fla. 4th DCA 1997)).

The Florida Constitution guarantees civil litigants the right of trial by an impartial jury. *See* Art. I, § 22, Fla. Const. ("The right of trial by jury shall be secure to all and remain inviolate."). "The purpose of voir dire is to obtain a fair and impartial jury, whose minds are free of all interest, bias, or prejudice." *Hoskins v. State*, 965 So. 2d 1, 13 (Fla. 2007) (citation and quotation marks omitted). "A reasonable voir dire examination assists the parties in determining whether a particular juror should be the subject of either a challenge for cause or a peremptory challenge." *Sisto v. Aetna Cas. & Sur. Co.*, 689 So. 2d 438, 440 (Fla. 4th DCA 1997).

In analyzing a jury selection issue, the principles set forth in criminal cases are equally applicable to civil cases. *See Carver v. Niedermayer*, 920 So. 2d 123, 124 (Fla. 4th DCA 2006). "Florida law allows the rehabilitation of jurors whose responses in voir dire raise concerns about their impartiality." *Juede v. State*, 837 So. 2d 1114, 1115 (Fla. 4th DCA 2003). "A juror who initially expresses bias may be rehabilitated during the course of questioning." *Disla v. Blanco*, 129 So. 3d 398, 401 (Fla. 4th DCA 2013) (citation omitted). A court looks at the entirety of a juror's voir dire to determine if a juror has dispelled all reasonable doubts about impartiality. *Id.* "When a trial court is deciding whether to excuse a juror for bias, '[t]he test is whether the juror possesses the state of mind necessary to render a verdict in accordance with the evidence and not based upon preconceived opinions.'" *Irimi*, 234 So. 3d at 795 (quoting *Matarranz v. State*, 133 So. 3d 473, 489 (Fla. 2013)). "A trial court must excuse a juror

where there is reasonable doubt whether the juror is impartial." *Id.* (quoting *Jackson v. State*, 213 So. 3d 754, 770 (Fla. 2017)).

A questionnaire may be used "[t]o assist in voir dire examination." Fla. R. Civ. P. 1.431(a)(2). Still, a juror questionnaire is to assist in the voir dire, not be a substitute for oral examination. "The right to ask potential jurors questions during voir dire about bias remains one of the most important, and often overlooked, protections against jury discrimination." *Irimi*, 234 So. 3d at 790 (citation omitted). *See also Ritter v. Jimenez*, 343 So. 2d 659, 661 (Fla. 3d DCA 1977) ("[T]he law grants to the respective parties the right, either personally or through their attorneys, to orally examine jurors on voir dire.").

The trial court excused eight prospective jurors without allowing appellant the opportunity to conduct voir dire examination. The trial court relied exclusively on the questionnaires filled out by the prospective jurors to determine if it was "conclusively clear" that the jurors could not serve as impartial jurors in this trial. In an attempt to lower the number of prospective jurors from 189 to the 100 seats in the courtroom, the parties agreed to see if there were any jurors they could both agree to excuse. In fact, both parties agreed to excuse some jurors from the trial. However, there were eight jurors that appellant objected to excusing without giving appellant the opportunity to question each prospective juror.

Philip Morris claimed that what each of the eight prospective jurors had written in the questionnaires demonstrated that their bias required excusal for cause. Philip Morris specifically relied on *Matarranz*, 133 So. 3d at 484, claiming that nothing the prospective jurors could say in voir dire would overcome the bias evidenced in the answers of the questionnaire. But *Matarranz* is inapplicable to the present case. In this case, the trial court dismissed the prospective jurors without allowing any oral examination of the jurors. *Matarranz* stood for the proposition that after oral examination by both sides, there are circumstances and situations in which these statements would require excusal for that case, no matter the attempted rehabilitation by the other party. That did not occur in this case, since there was no oral examination of the jurors by either party.

In *Irimi*, during voir dire by plaintiff's counsel, several jurors expressed a belief that the family of a person who dies after smoking cigarettes for a long period of time should not be allowed to bring a lawsuit against tobacco companies. 234 So. 3d at 791. Upon further questioning by plaintiff's counsel, each juror reaffirmed that their belief was strongly held and that they had reasonable doubt whether they could set that feeling aside. *Id.*

at 791, 797. Without allowing questioning by the defense, and over the defense's objection, the trial court dismissed thirty-one jurors, finding they could not be rehabilitated. *Id.* at 791, 794. The trial court later granted a new trial based on its dismissal of those jurors without allowing the defense to question them. *Id.* at 794.

In affirming, this court stated that "failure to allow counsel to inquire into a prospective juror's potential biases amounts to an abuse of discretion warranting reversal unless it becomes 'conclusively clear to the court after questioning, that there was no reasonable basis to anticipate that the juror could return a verdict against the defendant.'" *Id.* at 796 (quoting *Melendez*, 700 So. 2d at 792). The trial court did not find it was "conclusively clear" that the thirty-one jurors could not be impartial. *Id.* at 796. Additionally, the trial court had the "unique perspective to reflect upon its own decision" and "great deference [is given] to trial courts in making such decisions." *Id.*

Other cases have also resulted in reversal where the trial court did not permit questioning by counsel during voir dire. *See O'Connell v. State*, 480 So. 2d 1284, 1286-87 (Fla. 1985) (finding error in excluding prospective jurors after questioning by only the prosecutor and not the defense); *Green v. State*, 575 So. 2d 796, 797 (Fla. 4th DCA 1991) (holding the trial court erred in striking two venire members, who doubted their ability to be impartial, without first giving the defendant an opportunity to question them).

Further, in another line of cases, courts have utilized the conclusively clear standard where one party was not given the opportunity to orally question prospective jurors. *See Melendez*, 700 So. 2d at 793 (finding the trial court abused its discretion by not affording defense counsel an opportunity to question or rehabilitate prospective jurors); *Howard v. State*, 869 So. 2d 725, 726-27 (Fla. 2d DCA 2004) (reversing the dismissal of a juror for cause without permitting questioning by the defense where the record did not "conclusively establish" the juror could not fulfill her role as a juror); *Fleckinger v. State*, 642 So. 2d 35, 37 (Fla. 4th DCA 1994) (finding no abuse of discretion in excusing a juror after questioning by the court, but without allowing defense counsel to examine the juror, "[o]nce it became conclusively clear . . . that there was no reasonable basis to anticipate that the juror could return a verdict against the defendant").

Ultimately, since we review the questionnaires de novo, we must determine whether it was "conclusively clear" that the prospective jurors could not be impartial. We cannot say that. It is not "conclusively clear" in this case that any, or all, of the eight jurors could not be impartial based

entirely on the written answers in the questionnaire and without the benefit of oral examination by both parties. Thus, we must reverse.

We are also persuaded by the plain language of rule 1.431(b) which states the following:

> The parties have the right to examine jurors orally on their voir dire. The order in which the parties may examine each juror must be determined by the court. The court may ask such questions of the jurors as it deems necessary, but *the right of the parties to conduct a reasonable examination of each juror orally must be preserved.*

(emphasis added).

A reasonable examination of jurors by the parties often serves a useful function in the jury trial system. Jurors can on occasion have views that are not amenable to rehabilitation. As Judge Learned Hand noted nearly 100 years ago, "Juries are not leaves swayed by every breath." *United States v. Garsson*, 291 F. 646, 649 (S.D.N.Y. 1923). However, more often than not, jurors can be rehabilitated by oral examination by the parties. "Most human beings possess the capacity to overcome bad experiences and the ability to cast aside opinions and attitudes that—upon reflection—are shown to be irrational or unwarranted." *Matarranz*, 133 So. 3d at 493 (Canady, J., dissenting). Jurors, through rehabilitation, can reconsider their preliminary views.

The rule is clear and unequivocal that the "right of the parties to conduct a reasonable examination of each juror orally must be preserved." *See* Fla. R. Civ. P. 1.431(b). Where it is not "conclusively clear" that a prospective juror is partial, then the failure to allow oral examination will be reversible error. *See Irimi*, 234 So. 3d at 796.

Further, we address several evidentiary issues raised on appeal, which may or may not have been properly preserved. Nevertheless, we address these issues to provide guidance on remand. Initially, we consider the admission of an excerpt from a Seinfeld episode over appellant's objection that it allegedly disparaged attorneys and appellant's counsel. Philip Morris offered the video purportedly to show that the ability to sue tobacco companies was common knowledge in 1996, the year the decedent was diagnosed with lung cancer. We find that the video was not relevant because there was no showing that the decedent watched Seinfeld, no less this particular episode. *See* § 90.401, Fla. Stat. ("Relevant evidence is evidence tending to prove or disprove a material fact."). Philip Morris cites

no case where a court has ascribed knowledge to a person without that person ever having viewed that show or media.

We next consider the admission of a photograph depicting the decedent dining at the Celebrity Room in Palm Beach as well as testimony that the decedent could go into hotels owned by her family "and sign for things without paying." The trial court admitted this evidence over objections based on both relevancy and violation of an order in limine prohibiting evidence of the decedent's family's wealth. Philip Morris introduced the photograph purportedly to refute evidence that the decedent smoked ten hours a day. We find that this evidence was not relevant to any material issue. An individual photograph depicting the decedent not smoking is not probative of how much the decedent did or did not smoke. Testimony that the decedent could go into the hotels and "sign for things without paying" was also not relevant to any material issue.

In summary, the trial court committed reversible error by dismissing eight prospective jurors for cause without first allowing appellant's counsel to question them as permitted under rule 1.431(b). While trial courts are vested with discretion to place limitations on the scope and extent of counsel's right to voir dire, it is not within the trial court's discretion to take away that right where it is not conclusively clear that the jurors cannot be impartial. Thus, we reverse and remand for a new trial.

*Reversed and remanded.*

CONNER and KLINGENSMITH, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**