PER CURIAM.
Appellant’s conviction and sentence are affirmed.
We address only one issue. Appellant contends that the court’s excusing a prospective juror for cause during voir dire, after questioning by the court but without allowing defense counsel to examine the juror, mandates reversal under Green v. State, 575 So.2d 796 (Fla. 4th DCA 1991). See also O’Connell v. State, 480 So.2d 1284 (Fla.1985); Francis v. State, 579 So.2d 286 (Fla. 3d DCA 1991).
During voir dire, the trial court asked the prospective jurors if they had any religious reasons which would prevent them from serving. One woman responded as follows:
MS. SHELLMAN: I don’t feel qualified to sit on any jury and I am not evolved to a point where I could judge another human being. I can’t do it.
The court thereafter made an effort to rehabilitate the juror.
THE COURT: You’re judging facts, not people. You’re resolving facts.
MS. SHELLMAN: And ultimately that fact would affect another mortal. I can’t do that. I am not qualified. I am not.
⅜ ⅜ ⅜ ⅜ ⅜ ⅜
THE COURT: Well, this certainly is a duty ... we need ora’ citizenry to serve as jurors to judge facts as the jury.
MS. SHELLMAN: Your Honor, I do understand what you’re saying. However, in the end, I’m going to be a part of judging another individual. I can’t do that. I’m not — As I said, I’m going to use the word again. I’m not evolved to a point where I’m qualified to do that, to hurt or to in any way hurt another regardless of what they have done. I can’t do it.
‡ ⅜ ⅜ ⅜ ⅜ ⅜
MS. SHELLMAN: If I’m going to tarnish or hurt someone else’s reality, I won’t do that.
The state moved to have Shellman excused, and the court granted the motion. Defense counsel moved for a mistrial, arguing that it was improper to excuse a prospective juror without first giving the defense the opportunity to voir dire. The court denied this motion, but continued to question Shell-man:
THE COURT: You’re saying that under no circumstances could you render a verdict because you feel by doing so you’d be judging somebody else individually; is that correct?
MS. SHELLMAN: Yes, I can’t judge somebody else.
Thereafter, the court excused Shellman.
Unlike the prospective jurors in Green, who expressed doubt that they could be impartial due to their feelings about a particular issue, Ms. Shellman made it abso *37 lutely and unambiguously clear that she was incapable of reaching a verdict for the state.
In Stano v. State, 478 So.2d 1282 (Fla. 1985), cert. denied, 474 U.S. 1093, 106 S.Ct. 869, 88 L.Ed.2d 907 (1986), the Florida Supreme Court set out the test for determining a juror’s competency as “whether that juror can lay aside any prejudice or bias and decide the case solely on the evidence presented and the instructions given.” To make such determination, “counsel must have an opportunity to ascertain latent or concealed prejudgments by prospective jurors.... ” Id. Here, the trial court found it unnecessary to allow further inquiry into Shellman’s latent prejudgments because her expressed prejudgments convinced the court that she could not participate in the jury deliberations fairly regardless of the evidence and instructions.
In O’Connell, two jurors who, when examined by the prosecutor stated that they were opposed to the death penalty, were excluded for cause by the trial judge, over defense counsel’s objection that he had no opportunity to examine these jurors or try to rehabilitate them. The Florida Supreme Court held that the trial judge’s actions could not “be justified as an exercise of “control of unreasonably repetitious and argumentative voir dire questioning” ... since defense counsel never got to ask either of them a single question.” Id. at 1287. The court further noted that in contrast, the prosecutor had the opportunity to question each juror individually. We note that O’Connell was a capital case and the questions involved a unique body of law applicable particularly to “death qualifying” the jury.
We deem Green inapposite because there the issue involved jurors who had simply expressed doubts about their ability to be impartial due to their feelings about the subject matter of the particular case. This is an everyday occurrence in the courtrooms of this state, and we have determined that it is reversible error not to allow counsel an opportunity to rehabilitate such a juror notwithstanding the juror’s expression of uncertainty.
Here, in contrast, the issue is not one of the juror’s doubt about her ability to be fair, but rather the juror’s inability, or absolute refusal, to sit in judgment. This is also not a circumstance, as in Francis, where the court cut off all voir dire.
Certainly, the court had the discretion to initially question and control counsel’s questioning of prospective jurors. E.g. Slaughter v. State, 301 So.2d 762 (Fla.1974), cert. denied, 420 U.S. 1005, 95 S.Ct. 1448, 43 L.Ed.2d 763 (1975). Neither O’Connell nor Green adopted a per se rule. Once it became conclusively clear to the court after questioning, that there was no reasonable basis to anticipate that the juror could return a verdict against the defendant, it was not an abuse of discretion to excuse her.
AFFIRMED.
ANSTEAD, GLICKSTEIN and STONE, JJ., concur.