# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**HEATHER IRIMI,** as Personal Representative of the **ESTATE OF DALE MOYER,**
Appellant,

v.

**R.J. REYNOLDS TOBACCO COMPANY, et al.,**
Appellees.

No. 4D15-759

[January 10, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John J. Murphy, III, Judge; L.T. Case Nos. 08-80000 (19) and 08-CV-026337 (19).

Jonathan R. Gdanski of Schlesinger Law Offices, P.A., Fort Lauderdale, and Bard D. Rockenbach and Adam Richardson of Burlington & Rockenbach, P.A., West Palm Beach, for appellant.

Jason T. Burnette of Jones Day, Atlanta, GA, and Karen H. Curtis of Clarke Silverglate, P.A., Miami, for appellees.

### _On Motion for Rehearing and Rehearing En Banc_

MAY, J.

We deny the motion for rehearing and rehearing en banc, but withdraw our prior opinion and substitute the following in its place.

"The right to ask potential jurors questions during voir dire about bias remains one of the most important, and often overlooked, protections against jury discrimination." Tania Tetlow, Granting Prosecutors Constitutional Rights to Combat Discrimination, 14 U. Pa. J. Const. L. 1117, 1143 (2012). That protection is challenged in this appeal from an order granting a new trial.

The plaintiff argues the trial court erred in granting a new trial based on the court's failure to allow the defendants to question several members of the jury venire before excusing them for bias. She also asks us to limit

any new trial to the issue of entitlement to punitive damages in the event that we affirm the order granting a new trial. We disagree on both points and affirm.

At the start of jury selection, the court gave the venire an abbreviated statement of the case informing them that the plaintiff claimed the decedent's death was caused by smoking cigarettes, and that the tobacco defendants denied the claim. During voir dire, plaintiff's counsel asked:

> And so we all come in with certain feelings about cigarettes, certain feelings about smokers; and what I would like to know is, without hearing anything more than that, is there anybody here -- and I want to go in groups again -- but by a show of hands, anybody who thinks that a person who smokes cigarettes for a long period of time, say 40 or 50 years, gets a disease and ultimately dies from that disease, is there anybody that thinks that their family should not be allowed to bring a lawsuit against the tobacco companies?

Several jurors raised their hands. Plaintiff's counsel then asked each juror individually if their belief was strongly held, and if they had a reasonable doubt whether they could set that feeling aside. Before the trial court recessed for lunch, defense counsel asked the court to "admonish the panel if they have a strongly held view about some of these issues, to raise their hand so that we can address it in private, as opposed to sharing it with the whole group[.]" The court took the matter under advisement, but later overruled the objection.

When jury selection resumed, and before defense counsel had an opportunity to question the jurors, the following transpired.

> **The Court**: Counsel, I don't know where we go from here, to be candid with you. The state of the law in Florida as I understand it, and you can correct me, I don't see how you rehabilitate certain jurors.
>
> And I know we're trying to get a panel. We have a big panel here. I think, and I know the question was objected to. But I think it's a fairly innocuous question when the juror is asked if they believe a smoker or a family of a deceased smoker has a right to sue, and it's followed up by is that a strongly held belief, and is that something you can set aside.
>
> I don't see how you can rehabilitate those jurors. The flip side

2

of the coin would be if the defense comes up and their question, you know, is that same type of question; how many of you believe that if a tobacco company is involved selling cigarettes and somebody has a tobacco-related disease, you know, alleged from smoking, that it's just a question of how much you would ask for damages.

I think the other side of the coin is fair game as well, and they would be excused automatically. I just don't know how you can rehabilitate jurors who answer that question. And I know the defense hasn't even asked one question of the jury. But I don't know how you -- assuming that you ask them if there's a reasonable doubt in the mind of the Court, they're going to be excused. I don't see how you can rehabilitate those jurors. It would be my thought just to excuse them.

**Defense Counsel**: Well, Your Honor, first off, I think you're right about your understanding of rehabilitation and the availability of it under Florida law.

Our position is pretty simple. We just want a shot to examine the whole panel. It's not that we think Mr. Hammer may have succeeded in making a cause record for this morning could be rehabilitated. But it's just the interplay of all the different individuals is something that helps our examination as a whole.

I think you're right, Your Honor, and there were certainly some people this morning who articulated views that cannot be rehabilitated. Our preference is to leave the whole panel intact so that we get a chance at least to talk to the whole venire, with the acknowledgment that obviously some people have expressed views already for which a record has been made. They probably do have a bias that would result in exclusion.

**Plaintiff's Counsel**: If it please the Court, Your Honor, I understand defense counsel's request, and I don't disagree with his requesting the right to discuss this with the panel as a whole. I understand that. I'm only concerned with the Court's interest in getting the jury.

As far as time is concerned, and the likelihood of having enough jurors in this panel, if we can't get a jury out of this

panel, is there any way where we can get another handful of jurors to back this group up?

Because by my counts, we're treading on somewhere under 50 remaining jurors right now, based on those that volunteered in a way that is likely to be subject to cause.

And then with 18 challenges, assuming that some more folks will reveal themselves, I'm wondering if, Your Honor, should we be planning on getting more jurors? I don't know what Your Honor's pleasure is in that regard.

. . . .

**The Court**: So anyway: So it's not -- I haven't tried one of these in a while, but I guess it's not unexpected that you're going to have issues with the selection process. So, you know, we'll do as much as we can. I'm not trying to make you speed up, Mr. Hammer, on your questioning, but my thought also is that I can't get this courtroom every day. And, you know, if we come back, and having jurors questioned in my courtroom, I mean, we're maxed out at about 46 to 50 jurors, depending how many we put in there.

**Plaintiff's Counsel**: Judge, what I was thinking, because of that -- and I agree with the Court. Under Florida law, there's quite a few jurors that indicated they couldn't be fair. Couldn't set that aside.

I think out of abundance of caution, you ought to excuse them for cause. Because it will move things along a lot faster. Because they won't be answering questions, won't be wasting time talking to them. Because we know they're going to be excused anyway.

So I would request this Court to strike those individuals for cause that we feel have risen to that level, and I counted roughly about 30 people. And I would be happy to go through those real quick, and I think it's fair to strike those. Then that way I think I can move a lot quicker through the remaining panel. Because otherwise I'm going to be spending time talking to all them.

**The Court**: Why?

4

**Plaintiff's Counsel**: Because inevitably they're going to answer a question. And I can't just ignore them. And they're going to add to the conversation. And, you know, defense has already raised the point that we don't want to poison the panel as a whole. I don't want to risk that, because we are close to getting rid of an awful lot of people.

So rather than take the entire panel --

**The Court**: How much more questioning do you have? I know you only asked one -- very few -- the questioning so far has been very, very limited.

**Plaintiff's Counsel**: Judge, I've gone a little over an hour. I understand that. And I asked a series of questions. I anticipate having a couple more hours to go. But, you know, I think if we eliminate some of the people, it's going to streamline my voir dire quite a bit.

**Defense Counsel**: Your Honor, just one observation. I don't think there's any way we finish voir dire today.

**The Court:** I know there's not.

**Defense Counsel**: In fact, I would be surprised if Mr. Hammer is able to finish in the time we have this afternoon.

**The Court**: That's my point. Let's say Mr. Hammer is not -- that's what I'm concerned about -- he's not able to finish today. It's not going to come to your end. And I don't really see why we should be keeping all these people around.

**Defense Counsel**: I agree, Your Honor. Again, our position is we think that the defendants are entitled to examine the venire as a whole. They're part of this. They're part of this group. Sometimes they might chime in. It's very easy to say "Thank you, juror number whatever, we've heard from you. I don't mean to be rude, but we need to move on."

So it's not that we're going to try to spend time with them, but we want to keep the whole group together.

The other thing is, if we come back and this group sees that

30 people are gone, that's a pretty good invitation of people to just start saying things to go. We don't have a good feel for it.

I think what we really want to do here is get through Mr. Hammer's stuff. I can go, whenever he finishes, I will be shorter than him. Mr. Woods, Ms. Ruiz, I think will be even shorter than I am. Then we will go through and do all the cause challenges.

I think we have a still good shot if we end up with 25, 30 remaining, and we can pick a jury. But we should know where we stand with this panel sometime Monday morning or by lunch on Monday. And if we need to bring in more jurors, we can do so at that time.

But I'm worried -- so, one, I think we have the right to examine the panel as a whole. But, two, if we take 30 people out after one hour of questioning, we can very well encourage people to mass exodus right out of here and not have anybody left.

So just for the record, our position would be that we keep going, we get as much as we can do this afternoon accomplished, and we can give you a better update on our timing once Mr. Hammer is done.

But for the record, I don't intend to spend a significant amount of time with people where everybody is in agreement that a cause record has been made.

**The Court**: I guess part of my concern is you're suggesting we keep all these people here, and I understand why you're concerned about it. And there may be some truth to it, that there's an interplay. You can ask jurors questions.

But let's say we come back on Monday, and I'm bringing all these people in so you can have that interplay that you want and I can't get this courtroom. We have my -- my courtroom holds 46 to 50 people. Are you suggesting that you want to leave the people here and bring them back, we're going to do this in two sessions when you question the jurors? Because I can't get a big courtroom?

**Defense Counsel**: I would have to confer with my colleagues over the logistics of it. If we have space limitations on Monday,

maybe we could come up with a solution for you. But I think fundamentally if that's what we had to do, we might have to make arrangements to examine two panels.

But again, I have not had an opportunity to talk with my colleagues about how we would approach the situation.

**The Court**: Why don't you go ahead and talk to them now. We will be in recess.

**Defense Counsel**: Thank you, Your Honor, for the opportunity to let us confer back there in the side room. Our thought would be we get the jurors back in here, start the afternoon session.

Let's see what Mr. Hammer accomplishes. If he finishes up, we can have a talk this afternoon about whether there is an opportunity to get some jurors out of here before Monday and if we need to make arrangements to be in a smaller courtroom on Monday.

But our thought would be at a minimum, it would be much less conspicuous if we let people go, to do so at the end of the day. I'm not sure we're all on the same page with respect to the 30 or so people Mr. Hammer mentioned. We may need to argue some of those.

Our thought would be to bring the whole panel back in now, let Mr. Hammer keep going, and we confer again on this at 5:00, at the end of the day today.

**The Court**: Anything else . . . ?

**Plaintiff's Counsel**: Judge, our preference would be to go through and excuse those people that clearly meet the cause criteria.

**The Court**: Thank you. And Counsel, respectfully, that would be my suggestion as well. Let's just go through this docket and get rid of these jurors who -- basically indicated to your question, Mr. Hammer, that they had a strong feeling and that it's not something they could set aside.

I have my own notes. I'm sure that I might have missed one

or two, but I have my own notes.

Plaintiff's counsel began by listing his objected-to venire members. As plaintiff's counsel listed the jurors, defense counsel objected that he should be able to question them first. The trial court excused thirty-one jurors without providing the defense an opportunity to question them. The defense accepted the jury with the exception of its continued objection to the process employed to excuse thirty-one jurors without providing the defense an opportunity to question them.

The trial proceeded. The tobacco defendants argued the trial court was required to instruct the jury that punitive damages are only available for intentional torts—not negligence and strict liability claims. The court agreed. The trial court followed defense counsel's recommendation and did not include a question concerning whether punitive damages were warranted if the jury found no reliance.

The jury returned a verdict in favor of the plaintiff. It found the plaintiff did not prove the decedent relied on a statement or omission after May 5, 1982, but that he relied on a statement before that date. The jury apportioned the responsibility for the decedent's death as follows: 14.5% to R.J. Reynolds, 14.5% to Lorillard, 1% to Liggett Group, and 70% to the decedent.

The tobacco defendants filed several post-trial motions, including a motion for new trial. They argued the court should grant a new trial because it had "erroneously dismissed jurors for cause in each panel immediately after plaintiff's counsel's questioning, thus (i) depriving [d]efendants of the opportunity to orally question the entire venire; and (ii) tainting the remaining jurors' answers to the [d]efendants' *voir dire* questioning."

The plaintiff also moved for a new trial to allow the jury to decide the issue of entitlement to punitive damages. The trial court granted the defendants' motion for new trial based on its dismissal of thirty-one members of the venire without allowing the defense to question them. The court denied all other motions from both parties. From the order granting the new trial, the plaintiff now appeals. The tobacco defendants cross-appeal to preserve issues concerning the use of the *Engle*[1] findings.

The plaintiff argues the trial court erred by ordering a new trial on all issues when the court had not erred in dismissing the thirty-one venire

_____

[1] *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006).

8

members for cause. She claims no party has an absolute right to examine prospective jurors once the trial court has concluded the jurors cannot be impartial or rehabilitated.

The defendants respond that Florida case law holds that a trial court reversibly errs when it dismisses jurors for cause without allowing the attorneys to conduct voir dire. They argue the trial court erred in dismissing thirty-one jurors for bias without allowing defense counsel to examine them.

We review the trial court's order granting a new trial for an abuse of discretion. *Reffaie v. Wal-Mart Stores, Inc.*, 96 So. 3d 1073, 1075 (Fla. 4th DCA 2012). We have emphasized that our review is even more limited where the trial court grants a motion for new trial. *Thigpen v. United Parcel Servs., Inc.*, 990 So. 2d 639, 645 (Fla. 4th DCA 2008) (emphasis added) (internal citation and quotation omitted) ("A trial court's discretion to *grant* a new trial is of such firmness that it would not be disturbed except on a clear showing of abuse."). For who is in a better position to review an error than the one who makes it?

A trial court should grant a new trial where an examination of the entire case indicates that the error resulted in a miscarriage of justice. § 59.041, Fla. Stat. (2015). When a trial court is deciding whether to excuse a juror for bias, "[t]he test is whether the juror possesses the state of mind necessary to render a verdict in accordance with the evidence and not based upon preconceived opinions." *Matarranz v. State*, 133 So. 3d 473, 489 (Fla. 2013). While the court may ask questions of the panel members, "the right of the parties to conduct a reasonable examination of each juror orally must be preserved." Fla. R. Civ. P. 1.431(b). That right requires counsel for each side to orally examine the panel members during voir dire. *Jenkins v. State*, 824 So. 2d 977, 981 (Fla. 4th DCA 2002).

"A trial court must excuse a juror where there is reasonable doubt whether the juror is impartial. To determine whether such reasonable doubt exists, the trial court should consider the context and entirety of the juror's responses." *Jackson v. State*, 213 So. 3d 754, 770 (Fla. 2017) (internal citations omitted).

In its order granting new trial, the trial court cited *O'Connell v. State*, 480 So. 2d 1284 (Fla. 1985). There, the supreme court held the trial court erred in excluding prospective jurors when it first allowed the prosecutor— but not defense counsel—to question them. *Id.* at 1286-87. This amounted to a due process violation, and warranted a new trial. *Id.* at 1287; *see also Green v. State*, 575 So. 2d 796, 797 (Fla. 4th DCA 1991)

9

(applying *O'Connell* and holding the trial court erred in striking two venire members, who doubted their ability to be impartial, without first giving the defendant an opportunity to question them).

The trial court also cited two of our opinions in its order. *See Melendez v. State*, 700 So. 2d 791 (Fla. 4th DCA 1997); *Sisto v. Aetna Cas. & Sur. Co.*, 689 So. 2d 438 (Fla. 4th DCA 1997). *Melendez* is instructive.

There, we held that trial courts have considerable discretion in determining the extent of venire examination.

> [But, t]he court's failure to allow counsel to inquire into a prospective juror's potential biases amounts to an abuse of discretion warranting reversal unless it becomes "conclusively clear to the court after questioning, that there was no reasonable basis to anticipate that the juror could return a verdict against the defendant."

*Melendez*, 700 So. 2d at 792 (quoting *Fleckinger v. State*, 642 So. 2d 35, 37 (Fla. 4th DCA 1994)).

Here, at the outset of the discussion, the trial judge stated: "I don't see how you can rehabilitate those jurors. It would be my thought just to excuse them." While defense counsel agreed "there were certainly some people . . . who articulated views that cannot be rehabilitated," it did not acquiesce in the court's procedure and requested an opportunity to question the venire as a whole. And, the court did not find that it was "conclusively clear" the thirty-one potential jurors could not be impartial.

The trial court had the unique perspective to reflect upon its own decision to eliminate thirty-one people from the venire without allowing the defense to ask a single question. We provide great deference to trial courts in making such decisions. We agree with the trial court in correcting its initial error and granting a new trial.

With that said, we disagree with the tobacco defendants to the extent that their right to question the venire encompassed the use of that process to taint the entire venire. The better procedure would have been to allow the defense to question the thirty-one venire members outside the presence of the entire venire once it became apparent that some or all of them might possess a bias that could not be undone. In this way, the court could ensure that biased members were excused without tainting the entire venire with the bias of those members.

Because a new trial has been granted, we need not address the punitive damage issues raised. Subsequent case law has provided much needed guidance on these issues. *See, e.g., Soffer v. R.J. Reynolds Tobacco Co.*, 187 So. 3d 1219 (Fla. 2016). And lastly, we affirm the cross-appeal without further comment.

For the reasons expressed, we affirm the order granting a new trial.

*Affirmed.*

GROSS J., concurs.

CONNER, J., concurring in part and dissenting in part.

I concur with the majority to affirm the cross-appeal. However, I respectfully dissent from the affirmance of the trial court's order granting a new trial. My review of the record leads me to conclude the trial court did not err in dismissing the potential jurors without affording the defendants the opportunity to ask questions, and the grant of a new trial on a legal issue, rather than a factual issue, was error.

The majority correctly points out that a new trial should be granted to cure a miscarriage of justice and our review of a grant of a new trial is more limited than a denial, requiring a clear showing of abuse. However, we have also said:

> While ordinarily the granting of a new trial is within the sound discretion of the trial judge, reversible only on showing of an abuse of discretion, *if the ruling is grounded on a question of law, uncontaminated with factual conflict, the area of discretion in granting a new trial is drastically limited,*[ ]and the appellate court is on the same footing as the trial judge in determining the correct law to be applied.

*State Farm Mut. Auto. Ins. Co. v. Gage,* 611 So. 2d 39, 40 (Fla. 4th DCA 1992) (emphasis added, footnote omitted and citations omitted). Acknowledging a stronger showing is required to reverse a grant of new trial, the Second District has said that "the point being one strictly of law uncontaminated with factual conflict, *the area of discretion is drastically diminished if not entirely eliminated." Florida Power Corp. v. Smith*, 202 So. 2d 872, 875 (Fla. 2d DCA 1967)) (emphasis added) (quoting *Brown v. Fawcett Publ'ns, Inc.*, 196 So. 2d 465, 466 (Fla. 2d DCA 1967)). In *Florida Power*, the Second District reviewed the grant of a new trial on the

contention that a juror gave misleading information during jury selection. *Id.* Additionally, the court wrote:

> The rule is that there must be a reason in law for a trial Judge's setting aside a verdict and granting a new trial, otherwise the Judge invades the province of the jury.
>
> . . . .
>
> It is concededly true that a trial Court has broad judicial discretion in the matter of setting aside a verdict and granting a new trial but it must be predicated upon the proposition that error is shown to have been committed during the trial or some injustice done to the moving party.
>
> . . . .
>
> *A new trial should be granted only when substantial rights have been so violated as to make it reasonably clear that a fair trial was not had.*

*Id.* at 878 (emphasis added and citations omitted).

The majority quotes a significant portion of the trial transcript regarding a bench conference discussion of the responses of multiple prospective jurors to the group question posed by plaintiff's counsel. But the details of what happened prior to and after that discussion and the trial judge's decision to excuse biased potential jurors before giving the defense an opportunity to ask questions are important to the analysis.

*Before* the portion of the transcript quoted above, as to each potential juror excused, plaintiff's counsel asked the same series of three questions along the following lines:

> Is your belief a strongly held belief?
>
> Is your belief something you could set aside?
>
> Are your feelings so strong that you have a reasonable doubt as to whether or not you could set aside those feelings in a case like this?

As to the first and third questions, each excused potential juror answered affirmatively, and each answered negatively to the second question.

*After* the portion of the transcript quoted above, the trial judge had the plaintiff discuss one-by-one the potential jurors who responded as such to the three questions posed above. With the first potential juror discussed, the trial court acknowledged that the defense was objecting to the procedure, but wanted to know if there were any further objections. As each prospective juror was discussed, defense counsel gave one of three responses: "no objection," "same position," or "same objection." After hearing "same objection" a few times, the judge sought clarification:

> **The Court**: When you say "same objection," so the record is clear, I know you are objecting to the procedure, but you're not indicating that these jurors—you think these jurors can be rehabilitated or anything like that?
>
> **Defense Counsel**: Correct.
>
> **The Court**: Thank you.

In other words, defense counsel agreed with plaintiff's counsel assertion that each potential juror excused gave responses indicating bias which could not be rehabilitated. The defendants admitted the same at oral argument.

Reviewing the discussion quoted by the majority, defense counsel said the following as the basis for objecting to the procedure:

> Again, our position is we think that the defendants are entitled to examine the venire as a whole. They're part of this. They're part of this group.
>
> [W]e want to keep the whole group together.

Additionally, defense counsel expressed concern regarding releasing so many prospective jurors early on in the selection process: "if we come back and this group sees that 30 people are gone, that's a pretty good invitation of people to just start saying things to go. We don't have a good feel for it."

The majority correctly notes that a new trial should be granted to correct a miscarriage of justice. By rule, "the right of the parties to conduct a reasonable examination of each juror orally must be preserved." Fla. R. Civ. P. 1.431(b). The majority is correct that the right preserved by the rule requires counsel for each side to orally examine the panel members during *voir dire*. *Jenkins v. State*, 824 So. 2d 977, 981 (Fla. 4th DCA 2002). However, our supreme court has recently reaffirmed that "[a] trial court

13

*must excuse* a juror where there is reasonable doubt whether the juror is impartial." *Jackson v. State*, 213 So. 3d 754, 770 (Fla. 2017) (emphasis added) (citing *Banks v. State*, 46 So. 3d 989, 995 (Fla. 2010)). The majority interprets "must excuse" to mean only *after* both sides have an opportunity to ask questions. But our jury system is so loathe to allow bias and prejudice to seep into the process, that it appears to me that there is no error in dismissing a biased potential juror, *once both sides agree the bias exists and cannot be rehabilitated*, regardless of whether opposing counsel has an opportunity to question further.

The majority's reliance on *Melendez v. State*, 700 So. 2d 791 (Fla. 4th DCA 1997), is puzzling in that it uses a quote from the opinion, which in turn quotes our earlier opinion in *Fleckinger v. State*, 642 So. 2d 35 (Fla. 4th DCA 1994). *Fleckinger* is actually more controlling for the disposition of this case. In *Fleckinger*, the trial court excused a prospective juror after questioning by the court but without allowing defense counsel to examine the juror. *Id.* at 36. The prospective juror stated under questioning by the court that she could not serve because of her religious beliefs. *Id.* After several questions by the court to see if she would budge from her position, the State moved to excuse her, which the court granted. *Id.* The defense moved for mistrial, objecting to the procedure. *Id.* After observing that the record made it "absolutely and unambiguously clear that [the prospective juror] was incapable of reaching a verdict for the state," we concluded that "[o]nce it became conclusively clear to the court after questioning, that there was no reasonable basis to anticipate that the juror could return a verdict against the defendant, it was not an abuse of discretion to excuse her." *Id.* at 36-37. It appears a parallel situation occurred in this case.

On appeal, as they did below, the defendants argue that they were deprived of the ability to use "group dynamics" to assist in being able to intelligently use peremptory and cause challenges. However, the defendants, in my view, have not sufficiently explained how keeping the excused jurors until they were able to ask questions would have facilitated some group dynamic that would have made questioning more effective in determining which of the remaining jurors should be excused for cause or peremptorily. The trial judge was correctly concerned that keeping biased jurors on the venire ran the risk that one of those jurors could have said something so biased as to be grounds to dismiss the entire venire.

Other than some nebulous and speculative theory that they were deprived of the opportunity to work off "group dynamics," the defendants have failed to show what harm was suffered. The concern that releasing so many potential jurors early on would invite the remaining potential

14

jurors "to just start saying things to go" did not pan out and was offset by negating the risk that biased potential jurors could pollute the entire venire. It is clear the trial judge would have allowed further questioning if the defendants thought any excused juror could have been rehabilitated. If further questioning would have been requested to determine if rehabilitation was possible, I agree with the majority that individual questioning would have been the better course. However, the record simply does not support the conclusion that the defendants were deprived of a fair trial or that a miscarriage of justice occurred.

Although I am satisfied that the trial judge had second thoughts about the procedure he employed, in my view he did nothing wrong, given the agreement by the defendants that the excused jurors were biased and could not be rehabilitated. Having done nothing wrong during the trial, it was an invasion of the province of the jury sworn to try the case, to then take their verdict away after trial.

\*      \*      \*

***Not final until disposition of timely filed motion for rehearing.***