DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LEOTON RONDERO SEARS, SR.,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-1977

[November 12, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Caroline Cahill Shepherd, Judge; L.T. Case No. 50-2017-CF-008023-AXXX-MB.

Carey Haughwout, Public Defender, and Scott Thomas Pribble, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Alexandra A. Folley, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Leoton Rondero Sears, Sr., was convicted of burglary with an assault or battery (Count I) and attempted sexual battery on a victim between the ages of 12 and 17 (Count II). He raises two issues on appeal. We affirm on both issues and write to address Appellant's concern as to the trial court's dismissal of a potential juror during voir dire. Acknowledging the discretion afforded a trial judge in jury selection, we find no reversible error with respect to the trial court's determination that the prospective juror could not be impartial. Accordingly, we affirm the trial court's judgment and sentence.

## Background

The court began voir dire with an introductory statement to the venire discussing fairness and the importance of giving the State and Appellant a fair trial. These statements included:

But at the end it says, "Can you give both the State and the defendant a fair trial?" and I think people think themselves as fair. I think we all think of ourselves as fair.

But people when they answer that question, it's kind of human nature for them to say, "Yeah, I think so. I'll do my best. I'll give it my best shot. I'm pretty sure I can be fair."

So that's one of those things that if you know in your heart and you know in your mind and you know you can be fair, we need a yes. If you know you can't be fair, we need a no.

At this point, one of the potential jurors, "Juror K," raised her hand. The court noted Juror K's raised hand and stated that it would come back to her in a minute, before continuing to address the venire.

Shortly thereafter, the court asked the prospective jurors if they would be able to follow the law as written. Juror K again raised her hand and responded as follows:

[JUROR K]: I've been in this country for more than 38 years. I have gone to school, college and all of that. And I've voted for both parties, (indiscernible) mention it. But for the last three years, I feel that this country discriminate [sic] a lot against Hispanics, Blacks, anybody who's brown. And I used to love -- I mean, when I was a little when I was a child, I wanted to be a lawyer. And my second –

[THE COURT]: Ms. [K], I'm sorry. I'm going to interrupt you.

[JUROR K]: Yeah, but –

[THE COURT]: One of the things

[JUROR K]: But the thing is –

[THE COURT]: Hold on, Ms. [K].

[JUROR K]: I don't feel good about the law in this country, not right now. I feel very discriminated everywhere I go. And I really do – I try not to watch the news anymore; I'm sorry. I don't feel good about the law in this country anymore because I feel very discriminated. I know – I think it's very hard to hear that. But I'm sorry, that's how I feel. I'm pretty sure that

2

other Hispanics feel the same way.  And Black and Brown people.

[THE COURT]: Anything else you want to add?

[JUROR K]: That with the American in the White House, we feel very –

[THE COURT]: Ma'am, you realize this case has nothing to do with the White House?

[JUROR K]: – very discriminated.  I don't think I could be – I don't think I could – I know you're laughing, but –

[THE COURT]: I'm not laughing.

[JUROR K]: – that's the problem.  They see a brown person and they put it down, they discriminate, and they make fun of that.  And that's what I don't like.  I really don't.

Thereafter, the court explained to Juror K that the reason everyone was there was to pick a fair jury, stating that:

Our purpose here today, my purpose, the lawyers' purpose, Mr. Sears' lawyers' purpose, is to pick a jury that can be fair. A jury who has their own thoughts and beliefs because obviously you come in here with all of that.

But if you have something that's so strong that you're not going to be able to listen to the evidence and decide the evidence based on just the evidence, if it's all your own, you know, internal beliefs that are going to decide what the verdict is, then that wouldn't be fair.  It wouldn't be fair to the State, wouldn't be fair to Mr. Sears.

So it's my job to safeguard against that.  So that's what these questions are about.  And so if you do have really strong personal beliefs that would make you not a fair person, then we need to know that, you know.

And I thank Ms. [K] for her opinions because now we know she can't be a fair juror.  That's all we need to know.

3

Later, during voir dire, while another juror was explaining to the court that sheriffs had previously been unfair to her high school age son, Juror K made an indiscernible comment, prompting the court to hold a sidebar with the parties' counsel. During the sidebar, the defense noted that although Juror K had expressed some things that had happened to her personally, she had not stated that she could not be fair. Defense counsel stated that if the court directly asked Juror K "can you be fair [and] can you follow the law as you've been instructed," and Juror K answered "no," the defense would have no objection to her dismissal. However, the defense noted that the question had not yet been directly asked of her.

Following this sidebar, the court questioned Juror K as follows:

> [THE COURT]: Ma'am, I have one question. One question, yes or no. If you were selected to be a juror in this case, would you be fair and impartial?
>
> [JUROR K]: Emotionally, I'm not good. I can't watch even the news anymore because I get very frustrated on everything that's going on.
>
> [THE COURT]: So, based on your experience, do you think you could be fair?
>
> [JUROR K]: Like I say, I used to love to be here. I used to be very proud to be here, but not anymore.
>
> [THE COURT]: Okay. Thank you.
>
> [JUROR K]: I'm honest.

The court then excused Juror K without further questioning. At that time, Appellant did not raise an objection to this dismissal. After other prospective jurors had been questioned and several, by mutual consent of the parties, had been dismissed, the defense moved for a mistrial based on the removal of Juror K. The defense argued that Juror K "never said she couldn't be fair," and that "it's [not] appropriate for a court to sua sponte dismiss a juror without a motion before the Court."

The trial court denied the motion for a mistrial, commenting that Juror K had stated that she could not "follow the law" and had answered "no" to the question "Can you be fair and impartial." A jury was seated and, following trial, Appellant was convicted and sentenced. This appeal followed.

## Analysis

Appellant argues that the trial court erred in dismissing Juror K without allowing the defense to further question or attempt to rehabilitate her. Appellant contends that Juror K's comments merely expressed concerns about the fairness of the criminal justice system and the role race plays, but they did not express a clear refusal or inability to be impartial, to follow the law or to reach a verdict. The State responds that Juror K's comments evidenced a reasonable doubt as to her fitness to serve as a juror.

A trial court has "broad discretion in the procedural conduct of trials," including "in deciding whether a juror may sit." *Jennings v. State*, 512 So. 2d 169, 173 (Fla. 1987); *Rock v. State*, 638 So. 2d 933, 934 (Fla. 1994). Whether a prospective juror is competent to serve as a juror is a mixed question of law and fact and, on appeal, this Court will not disturb the trial court's decision unless it is manifestly erroneous. *Suri v. State*, 937 So. 2d 216, 219 (Fla. 3d DCA 2006) (citing *Mills v. State*, 462 So. 2d 1075, 1079 (Fla. 1985)).

In a criminal trial, it is the trial court's duty to see that defendants are tried by a jury such that not even the suspicion of bias, prejudice or prejudgment can attach to any member of the jury. *Nicholas v. State*, 47 So. 3d 297, 305 (Fla. 2d DCA 2010). "The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court," rather than on his preconceived opinions. *Burgess v. State*, 248 So. 3d 131, 133 (Fla. 4th DCA 2018) (quoting *Lusk v. State*, 446 So. 2d 1038, 1041 (Fla. 1984)). If, instead, a prospective juror indicates that he or she may be biased, this sentiment must inform the trial court's analysis of the juror's partiality. *Matarranz v. State*, 133 So. 3d 473, 489 (Fla. 2013).

We have previously explained that a potential juror merely expressing doubts on voir dire about his ability to be impartial does not necessarily entail a finding of actual bias. *Carratelli v. State*, 915 So. 2d 1256, 1260 (Fla. 4th DCA 2005). Further, "[t]he mere fact that a juror gives equivocal responses does not [automatically] disqualify that juror for service." *Suri*, 937 So. 2d at 219 (quoting *Busby v. State*, 894 So. 2d 88, 96 (Fla. 2004)). The dispositive "question is whether the responses voiced by the juror were equivocal enough to generate a reasonable doubt about his fitness as a juror." *Id.*

5

Procedurally, when a prospective juror's answers suggest incompetency to be a juror, rehabilitation is generally the proper next step. *Conde v. State*, 860 So. 2d 930, 941 (Fla. 2003). Florida's Rules of Criminal Procedure provide that when voir dire raises concerns about a potential juror's impartiality, before the court excuses the juror for cause, "[c]ounsel for both the State and defendant shall have the right to examine the juror orally on their voir dire" to clarify whether the juror's answers to prior questioning indicated an inability to fulfill the obligations of a juror. *See* Fla. R. Crim. P. 3.300(b), (c). While the trial court may also examine each prospective juror individually, "[t]he right of *the parties* to conduct a[] [reasonable] examination of each juror orally *shall* be preserved." Fla. R. Crim. P. 3.300(b) (emphasis added).

Despite the mandatory language of Rule 3.300(b), our supreme court has indicated that this right of the defense to question the venire is not absolute. *See Matarranz, v. State*, 133 So. 3d 473, 485-86 (Fla. 2013). In *Matarranz*, the Florida Supreme Court clarified when rehabilitation of prospective jurors might be available:

> Trial courts and counsel regularly find themselves addressing prospective jurors who maintain fixed opinions and firmly held beliefs based on personal life experiences. Such opinions and beliefs are defining qualities of these individuals. At least with regard to whether a prospective juror is unfit to serve given the circumscribed time frame provided by voir dire, we recognize opinions and biases that arise from these circumstances as immutable. However, courts and counsel also find themselves addressing jurors who misunderstand aspects of the law and the judicial process. These misunderstandings are based not on personal experience and beliefs, but on a lack of familiarity with or misinformation concerning the law. *We clarify today that courts and counsel are correct to engage prospective jurors in a dialogue addressing their partialities, biases, prejudices, and misconceptions when they are rooted in a lack of familiarity with the judicial system as part of an effort to rehabilitate <u>in contrast to those immutable opinions and attitudes that arise from personal life experiences and firmly held beliefs</u>*. Florida law "allows 'the rehabilitation of jurors whose responses in voir dire raise concerns about their impartiality.'" *Rimes v. State*, 993 So. 2d 1132, 1134 (Fla. 5th DCA 2008) (quoting *Juede v. State*, 837 So. 2d 1114, 1115 (Fla. 4th DCA 2003)). Concerns that stem from misinformation and confusion

6

concerning the law or process are ripe for discussion and redress through rehabilitation.

*Id.* (emphasis added).

Otherwise stated, in determining whether the trial court must allow the parties to attempt to rehabilitate a prospective juror, "it is necessary for courts to distinguish between those biases and beliefs that define a prospective juror—and thus produce little if any actual change in him or her from intensive questioning—and those in which information and explanation may provide a prospective juror with the 'requisite familiarity' and insight into the judicial process that will render him or her competent to serve." *Id.* at 486–87. *Matarranz* therefore supports the argument that when a juror expresses reservations based on immutable opinions and attitudes that arise from personal life experiences or otherwise firmly held beliefs, it may not be necessary or even appropriate for the trial court to attempt to rehabilitate the juror into rejection of those beliefs.

In distinguishing between such immutable biases that voir dire would not alter, and those biases open to exploration and requiring rehabilitation, we have held that while the trial court has considerable discretion in determining the extent of venire examination,

> [t]he court's failure to allow counsel to inquire into a prospective juror's potential biases amounts to an abuse of discretion warranting reversal *unless it becomes "conclusively clear to the court after questioning, that there was no reasonable basis to anticipate that the juror could return a verdict against the defendant."*

*Melendez v. State*, 700 So. 2d 791, 792 (Fla. 4th DCA 1997) (quoting *Fleckinger v. State*, 642 So. 2d 35 (Fla. 4th DCA 1994) (emphasis added)).

In *Fleckinger*, we affirmed the trial court's dismissal of a prospective juror, finding that the court had not erred in not allowing counsel to rehabilitate the juror who repeatedly refused to serve because she believed she was "not evolved to a point where [she] could judge another human being." 642 So. 2d at 36-37. In that case, the following exchange took place during voir dire:

> [Juror]: I don't feel qualified to sit on any jury and I am not evolved to a point where I could judge another human being. I can't do it.

. . . .

THE COURT: You're judging facts, not people. You're resolving facts.

[Juror]: And ultimately that fact would affect another mortal. I can't do that. I am not qualified. I am not.

THE COURT: Well, this certainly is a duty . . . we need our citizenry to serve as jurors to judge facts as the jury.

[Juror]: Your Honor, I do understand what you're saying. However, in the end, I'm going to be a part of judging another individual. I can't do that. I'm not – As I said, I'm going to use the word again. I'm not evolved to a point where I'm qualified to do that, to hurt or to in any way hurt another regardless of what they have done. I can't do it. . . . If I'm going to tarnish or hurt someone else's reality, I won't do that.

. . . .

THE COURT: You're saying that under no circumstances could you render a verdict because you feel by doing so you'd be judging somebody else individually; is that correct?

[Juror]: Yes, I can't judge somebody else.

*Id.* at 36.

Based on this exchange, we held that dismissal of the juror without allowing questioning by either party was proper because, unlike previous cases where prospective jurors had simply *expressed doubt* that they could be impartial due to their feelings about the particular issue, the juror in *Fleckinger* "made it absolutely and unambiguously clear that she was incapable of reaching a verdict for the [S]tate." *Id.* at 36–37. We explained that "the trial court found it unnecessary to allow further inquiry into [the juror's] latent prejudgments because her expressed prejudgments convinced the court that she could not participate in the jury deliberations fairly regardless of the evidence and instructions." *Id.* at 37. We emphasized that this was distinguishable from "everyday occurrence[s] in the courtrooms of this state," where jurors simply express doubts about their ability to be impartial, because the juror in *Fleckinger* had expressed not a doubt, but an inability, or absolute refusal, to sit in judgment. *Id.* "Once it became conclusively clear to the court after questioning that there

8

was no reasonable basis to anticipate that the juror could return a verdict against the defendant, it was not an abuse of discretion to excuse her." *Id.*

Similarly, in the instant case, Juror K's comments certainly constituted more than a mere expression of doubt that she could be impartial. While she did not expressly refuse to sit in deliberations, as in *Fleckinger*, the relevant determination before the trial court was whether her comments reflected an immutable bias that could not be cured through further dialogue and rehabilitation or, alternatively, whether they reflected an inability to rule based on the evidence presented, rather than on preconceived notions. In ruling on the defense's motion for mistrial, the trial court found that the comments reflected both:

> [T]here was no equivocating by potential Juror [K]. She was adamant and repeatedly insisted that the entire system was flawed and prejudiced against all people of any color. She refused to answer simple questions about whether she could be fair and impartial or whether she could decide her verdict based on the evidence and the law. She stated that the trial court was laughing, presumably at her, apparently when she saw the trial judge give up trying to get a word in between Juror [K]'s tirade. The juror evaded all questions about whether she could be fair and follow the law.

"A trial court must excuse a juror where there is reasonable doubt whether the juror is impartial. To determine whether such reasonable doubt exists, the trial court should consider the context and entirety of the juror's responses." *Irimi v. R.J. Reynolds Tobacco Co.*, 234 So. 3d 789, 795 (Fla. 4th DCA 2018) (quoting *Jackson v. State*, 213 So. 3d 754, 770 (Fla. 2017)); *see also Levy v. State*, 50 So. 3d 1218, 1220 (Fla. 4th DCA 2010) ("If there is any reasonable doubt about a juror's impartiality, the juror should be excused for cause." (citing *Carratelli*, 832 So. 2d at 854)); *Peters v. State*, 874 So. 2d 677, 679 (Fla. 4th DCA 2004) ("In this district, close cases should be resolved in favor of excusing the juror rather than leaving a doubt about the juror's impartiality.").

As an appellate court, we must afford the trial court's characterizations of Juror K's comments with some deference because,

> unlike the reviewing court which is limited to a cold transcript, the trial court directly hears the tone and inflection of the prospect's voice and observes the prospect's facial expressions, "body language" and other physical demeanor, and thus generally has the better ability to assess the

individual's candor and the probable certainty of the answers to critical questions.

*Brown v. State*, 728 So. 2d 758, 759 (Fla. 3d DCA 1999) (citing *State v. Williams*, 465 So. 2d 1229 (Fla. 1985)); *but cf. Frogel v. State*, No. 4D19-2781 (Fla. 4th DCA Oct. 28, 2020) (reversing where counsel timely objected to trial court's dismissal of jurors *based entirely on written answers to a questionnaire*; as a result, a de novo standard of review was applied).

We also note that the defense did not request to examine Juror K before her dismissal, but rather, twice agreed that if she responded that she could not be fair, the defense would have no objection to her removal. Finally, it is noteworthy but not necessarily dispositive that Appellant "has not shown that a biased juror was seated or that the outcome of the trial would have different." *Montanez v. Sec'y, Fla. Dep't of Corr.*, No. 5:11-cv-527-Oc-27PRL, 2014 WL 272560, at *11 (M.D. Fla. Jan. 24, 2014).

Here, the trial court concluded that there was reasonable doubt "that [Juror K] could not render a verdict solely on the evidence presented, nor could she follow the law based on her personal life experiences." Under the circumstances set forth above and the applicable law, it was not an abuse of discretion to excuse her.

## Conclusion

"It is [] without dispute that a defendant's right to an impartial jury . . . does not entitle that defendant to be tried by any particular jurors or by a jury of a particular composition." *West v. State*, 584 So. 2d 1044, 1045 (Fla. 1st DCA 1991). Because the trial court found that Juror K's evasive answers to the question "can you be fair?" raised a reasonable doubt about her impartiality, and in acknowledgment of the broad deference afforded the trial court, we find Appellant did not meet his burden for reversal with respect to the dismissal of Juror K from the jury pool.

*Affirmed.*

CIKLIN and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***